# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

LASHAWN R. PETTUS,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 1:20-cv-187 |
| - vs - | | | District Judge Michael R. Barrett |
| | | | Magistrate Judge Michael R. Merz |
| WARDEN, | | | |
| Franklin Medical Center, | | | |
| | | : | |
| | Respondent. | | |

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF Nos. 23 & 46), the Amended Return of Writ (ECF No. 47), and Petitioner's Reply (ECF No. 51).  Judge Barrett's recent decision declining to allow an evidentiary hearing concludes "The Magistrate Judge may proceed to consider the merits of Petitioner's petition in due course as his caseload allows." (ECF No. 58).  The case is thus ripe for decision.

**Litigation History**

On October 21, 2016, the Hamilton County grand jury indicted Pettus for twelve counts of forgery in violation of Ohio Rev. Code § 2913.31(A)(3) (counts 1-4, 7, 9-13, and 15), and four counts of theft in violation of Ohio Rev. Code § 2913.02(A)(3) (counts 6, 8, 14, and 16).  All individual counts

of theft that had been committed against each bank were aggregated and charged as a single offense pursuant to Ohio Rev. Code § 2913.61(C)(1). (Indictment, State Court Record, ECF No. 23, Ex. 1). Pettus waived his right to trial by jury and was convicted after a bench trial of all counts except Count 11. The trial court sentenced Pettus to sixty months imprisonment plus six months consecutive because the offenses were committed while Pettus was on transitional control at Talbert House for a prior conviction.

Represented by new counsel, Pettus appealed to the Ohio First District Court of Appeals. Part way through the appellate process, Pettus's first appellate counsel withdrew and was replaced by Attorney Anzelmo who continues to represent him in these habeas corpus proceedings. The First District remanded for required findings to support imposing consecutive sentences, but otherwise affirmed. *State v. Pettus*, 2019-Ohio-2023 (1st Dist. May 24, 2019)(copy at ECF No. 23, Ex. 41).

On appeal, the Supreme Court of Ohio accepted for review an issue certified by the First District, to wit:

> When a defendant is convicted of multiple theft offenses committed in the offender's same employment, capacity, or relationship to another, does R.C. 2913.61(C) permit the offenses to be aggregated where the victim of the offense is not an elderly person, a disabled adult, or an active duty service member or spouse of an active duty service member?

The Supreme Court decided that Ohio Revised Code § 2913.61(C) does allow for the disputed aggregation and affirmed the conviction. *State v. Pettus,* 163 Ohio St. 3d 55 (2020).

On August 20, 2019, Pettus moved to reopen his direct appeal under Ohio R. App. P. 26(B), asserting ineffective assistance of appellate counsel in his counsel's failure to include the following assignments of error:

> 1. Pettus' was denied his right to a preliminary hearing, in violation of his rights to equal protection under the federal and state constitutions.

2. Pettus' was denied his right to hire private counsel, in violation of his rights under the Sixth Amendment to the United States Constitution.

(26(B) Application, State Court Record, ECF No. 23-1, Ex. 57).  The First District denied the Application. (Entry, State Court Record, ECF No. 46, Ex. 80) and the Supreme Court of Ohio declined review. *Id.* at Ex. 83.

In his Amended Petition, Pettus pleads the following grounds for relief:

> **Ground One**: Violation of Equal Protection Clause: Pettus was denied his right to a preliminary hearing prior to his indictment;
>
> **Supporting Facts:** Petitioner was denied the right to a preliminary hearing by the State with its use a loophole in Ohio's Crim.R. 5(B), while other similarly situated defendants in Ohio were in fact permitted the right to have preliminary hearings.
>
> **Ground Two**: Violation of Sixth Amendment: Pettus has the right to be represented by an otherwise qualified attorney whom that he, as a defendant, can afford to hire;
>
> **Supporting Facts:** Petitioner was expressly told by the trial court judge, on the record, that the court would not let Pettus hire his private counsel of choice and that Pettus only had two options, take the court-appointed counsel or represent himself at trial.
>
> **Ground Three**: Violation of Double Jeopardy Clause: Allied Offenses, R.C. 2941.25: Forgery and Theft offenses merge when the act of forgery provides the means for which the theft occurs;
>
> **Supporting Facts:** Petitioner deposited his own personal checks, made out to himself, into his personal bank account; when the checks cleared and funds were made available, he made partial withdrawals; therefore, the alleged theft could not have occurred without the alleged uttering. The charges should have been merged for the purpose of sentencing and the alleged motivation was a single animus.
>
> **Ground Four**: Violation of Due Process and Equal Protection Clauses: Pettus, represented by appointed counsel, is entitled to file, *pro se*, a brief as a supplement to the brief filed by counsel;

**Supporting Facts:** Petitioner was denied the procedural right to file a supplemental brief when his court-appointed appellate counsel willfully refused to argue meritorious errors in the appellant brief~ while the very appellate court permitted other appellants the right to file pro se supplemental briefs in similar situations.

**Ground Five**: Violation of Sixth Amendment: Ineffective Assistance of Appellate Counsel - Counsel was deficient for failing to raise issues that have a "reasonable probability" to be successful;

**Supporting Facts:** Petitioner's court-appointed appellate counsel willfully refused to raise and present major arguments in the direct appeal, despite Pettus' expressly written request and supportive case law and evidence.

**Ground Six**: Violation of Due Process and Equal Protection Clauses: R.C. § 2913.61(C)(l) allows aggregation of theft offenses only when the victims are eldery [sic] or disabled or who are in the military or who are spouses of those in the military.

**Supporting Facts:** Petitioner's misdemeanor charges are aggregated to make felony charges despite the fact that none of the alleged victims are elderly, disabled, or in the military or who are spouses of those in the military; the state never attempted this improper aggregation with other similarly situated persons.

(Petition, ECF No. 1, PageID 6-7). Petitioner has voluntarily withdrawn Ground Six (ECF Nos. 32, 36).

# Analysis

## Ground One: Denial of Equal Protection by Denial of Preliminary Hearing

In his First Ground for Relief, Petitioner asserts he was denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution when he was denied a preliminary hearing before being indicted.

4

Respondent asserts this Ground for Relief is procedurally defaulted because it was not included in the initial brief on direct appeal (Amended Return, ECF No. 47, PageID 2443, *et seq*.). Alternatively, Respondent defends on the merits. *Id.* at PageID 2446, *et seq.*

Pettus replies that any procedural default in presenting this claim to the First District Court of Appeals is excused because it was ineffective assistance of appellate counsel to fail to present it.  (Traverse/Reply, ECF No. 51, PageID 2471, *et seq*.)  Pettus asserts the ineffective assistance of appellate counsel claim is preserved because it was presented to the First District in the 26(B) Application and is brought forward to this Court in Ground Five. *Id.*

Ineffective assistance of counsel can serve as excusing cause for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1985).  However the ineffective assistance claim itself must be properly presented to the state courts in the first instance and not be itself procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446 (2000).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal

habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v.*

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*,

456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were
> procedurally defaulted in state court—that is, claims that the state
> court denied based on an adequate and independent state procedural
> rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175
> L.Ed.2d 417 (2009). This is an important "corollary" to the
> exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124
> S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which
> a state prisoner fails to exhaust state remedies, a habeas petitioner
> who has failed to meet the State's procedural requirements for
> presenting his federal claims has deprived the state courts of an
> opportunity to address" the merits of "those claims in the first
> instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111
> S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default
> doctrine thus advances the same comity, finality, and federalism
> interests advanced by the exhaustion doctrine. See *McCleskey v.
> Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims

that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020),

citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

It is undisputed that Ground One was not pleaded as an assignment of error by Pettus's

first appellate counsel. If it was ineffective assistance of appellate counsel to omit that claim, then

the omission will excuse the procedural default.

The governing standard for ineffective assistance of counsel is found in *Strickland v.*

*Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has
> two components. First, the defendant must show that counsel's
> performance was deficient. This requires showing that counsel was
> not functioning as the "counsel" guaranteed the defendant by the

> Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).   The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  Pettus agrees with this proposition (Traverse/Reply, ECF No. 51, PageID 2481).

Pettus properly preserved his claim that omitting the preliminary hearing assignment of error was ineffective assistance of appellate counsel by presenting it in his 26(B) Application. Under Ohio law that it the correct method of presenting such a claim.  *State v. Murnahan*, 63 Ohio St. 3d 60 (1992).

The First District decided this ineffective assistance of appellate counsel claim on the merits, concluding that it was timely filed (Entry, State Court Record, ECF No. 46, Ex. 80, PageID 2269).  It applied the correct standard for ineffective assistance claims, i.e., the one enunciated in *Strickland*. *Id.* at PageID 2270.  Under 28 U.S.C. § 2254(d)(1), this Court must defer to the First District's decision on the ineffective assistance of appellate counsel claim unless it is contrary to or an objectively unreasonable application of clearly established federal law as announced in the

holdings of cases decided by the United States Supreme Court. *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000); *Bell v. Howes*, 703 F.3d 848 (6th Cir. 2012).

Pettus asserts, however, that the First District did not decide his ineffective assistance of appellate counsel claim on the merits (Traverse/Reply, ECF No. 51, PageID 2481, claiming "the court summarily denied the motion with no consideration of the merits. . .).

The Magistrate Judge disagrees. Regarding this first omitted preliminary hearing assignment of error, the First District wrote:

> In his first proposed assignment of error, Pettus contends that he was denied his right to a preliminary hearing, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Ohio Constitution. Appellate counsel was not constitutionally ineffective in failing to assign this matter as error.
>
> Pettus was indicted in October 2016. In February 2017, he moved pro se to dismiss the charges against him, on the ground that he had been denied equal protection when he was not afforded a preliminary hearing or the opportunity to request a preliminary hearing. The trial court overruled the motion. The overruling of that motion was not assigned as error on appeal.
>
> A preliminary hearing is not constitutionally mandated and is not necessary after a grand jury has returned an indictment, because "[t]he only purpose of a preliminary hearing is to determine whether sufficient facts exist to warrant the court in binding the accused over to the grand jury." *State v. Wigglesworth*, 18 Ohio St.2d 171, 248 N.E.2d 607 (1969), paragraph one of the syllabus. Thus, the "direct indictment" procedure permitted by Crim.R. 5(B) does not deny the defendant due process or equal protection. *State v. Morris,* 42 Ohio St.2d 307, 329 N.E.2d 85 (1975), paragraph three of the syllabus. Accord *State v. Twyman,* 1st Dist. Hamilton No. C-840092, 1984 WL 7077 (Nov. 21, 1984). Consequently, Pettus's first proposed assignment of error presented no prospect for success had it been presented on appeal.

(Entry, State Court Record, ECF No. 46, Ex. 80, PageID 2270-71).

9

This clearly meets the federal habeas standard of a decision on the merits. The Supreme Court held in *Harrington* "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decisions can be deemed to have been 'adjudicated on the merits." 562 U.S. at 100. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary*." Brown v. Bobby*, 656 F.3d 325, 329 (6ᵗʰ Cir. 2011), *quoting Harrington,* 131 S. Ct. at 784-85. Here the First District gave its reason for denying the 26(B) Application, to wit, that the proposed assignment of error would have had no possibility of winning.

It cannot be ineffective assistance of appellate counsel to fail to raise an assignment of error which had no prospect of being successful. But Pettus argues that the Supreme Court has held "that it is objectively unreasonable to conclude that the possible errors provided no reasonable probability of success when the defense counsel never presents the matter." (Traverse/Reply, ECF No. 51, at PageID 2482, citing *Porter v. McCollum*, 558 U.S. 30, 31 (2009). *Porter* involved a claim of ineffective assistance of trial counsel in the mitigation phase of a death penalty case. The Court reinstated the writ which had been granted by the District Court, holding:

> Like the District Court, we are persuaded that it was objectively unreasonable to conclude there was no reasonable probability the sentence would have been different if the sentencing judge and jury had heard the significant mitigation evidence that Porter's counsel neither uncovered nor presented.

*Id.* at 31. But that is not the situation here. Unlike the sentencing judge and jury in *Porter*, the First District did hear, in considering the 26(B)Application, precisely the argument Pettus claims his first appellate attorney should have made. Omitted assignments of error are unlike undiscovered and unpresented mitigation evidence. Pettus was able to reconstruct and present

10

precisely the legal argument he says his first appellate counsel omitted and to the same decisional body which would have considered it in the first instance if the first appellate counsel had presented it. That is to say, the same body of judges who would have had to be persuaded by the omitted assignment, when they did hear that assignment on the 26(B) Application, were not persuaded by it.

Because the First District's decision of the 26(B) Application was not an objectively unreasonable application of *Strickland*, is entitled to deference under § 2254(d)(1). Therefore Pettus has not shown ineffective assistance of appellate counsel to excuse his procedural default on Ground One and it should be dismissed on that basis.

In the alternative, Ground One is without merit. Because the First District did not consider Ground One on the merits, if this Court were to reach the merits, it would look to the last reasoned rejection of this claim in the state courts. Y*lst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Pettus was indicted on October 16, 2016 (Indictment, State Court Record, ECF No. 23, PageID 220). A warrant for his arrest on the Indictment was issued at the same time on request of the prosecutor. *Id.* at PageID 211. Pettus was arrested November 15, 2016, and presented with a copy of the Indictment. (Motion, State Court Record, ECF No. 23, Ex. 14). On February 16, 2017, Petitioner filed a Motion to Dismiss, raising this claim that denial of a preliminary hearing violated the Equal Protection Clause. *Id.* He claims in the motion that he was never charged in court prior to issuance of the Indictment, but that:

> The State has afforded other defendants throughout the State of Ohio the right to be charged in court prior to the issuance of an indictment, the right to a preliminary hearing, or at least the opportunity to request a preliminary hearing, prior to the issuance of an indictment by a grand jury. This is evidenced in various courts throughout the multiple counties in the State of Ohio including, but not limited to, Franklin County, Cuyahoga County and here in Hamilton County.

11

*Id.* at PageID 289. He notes that he had previously complained that the Indictment was unlawful because there had never been a complaint with a supporting affidavit filed in his case. *Id.* at PageID 290. He asserts that denying him a preliminary hearing while granting it to other similarly-situated defendants violates the Equal Protection Clause, citing *Cochran v. Kansas,* 316 U.S. 255 (1942); *Duncan v. Missouri,* 152 U.S. 377 (1894) (the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual people to an arbitrary exercise of the powers of the State); *NAACP **v.** Alabama,* 375 U.S. 449[1] ("the assertion of federal rights, when plainly and reasonably made, are not to be defeated under the name of local practice").

Judge Metz denied Pettus's Equal Protection claim on two bases. First of all he found it was untimely filed under Ohio R. Crim. P. 12(D)(Decision, State Court Record, ECF No. 23, Ex. 16). He also addressed the merits and found the claim wanting on that basis as well:

> A preliminary hearing is a procedure cot1ducted by a municipal or county court to determine whether there is probable cause to bind the defendant over to the common pleas court for possible indictment. Where a defendant has already been directly indicted, and is first arrested and arraigned upon an indictment no preliminary hearing is necessary or appropriate. Under Criminal R. 5(A), "[w]hen a defendant first appears before a judge or magistrate, the judge or magistrate . .. shall inform the defendant: ... (4) Of his right to a preliminary hearing in a felony case, when his initial appearance is not pursuant to indictment .... "
>
> Because Mr. Pettus was directly indicted in this court, he was not entitled to a preliminary hearing in the Hamilton County Municipal Court. The judge or magistrate had no duty to inform him of a right to a preliminary hearing, because he had none. Had leave to file the motion to dismiss been granted, it lacks merit and would be denied.

*Id.* at PageID 297-98.

Regarding Judge Metz's procedural default finding, it is clear that (1) Ohio has a rule governing the timing of pre-trial motions in felony cases, (2) Pettus breached that rule by filing his

---

[1] The correct citation is 357 U.S. 449 (1958).

motion to dismiss late, and (3) Judge Metz enforced that rule against him. The Magistrate Judge concludes that Ohio Crim. R. 12(D) is an adequate and independent Ohio procedural rule because it does not discriminate against claims based on federal law and it is necessary to protect the State's interest in speedily trying felony cases. See Ohio Revised Code § 2945.71. Thus the State meets the four requirements for an enforceable procedural default in this instance. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). Pettus makes no attempt to show excusing cause and prejudice. His equal protection claim in Ground One is therefore procedurally defaulted.

The claim is also without merit. It is unquestionably true that Ohio R. Crim P. 5 treats some felony defendants differently from others. Those who are charged by complaint and arrested on process issued on the complaint typically have their initial appearance before a municipal judge. That court must set a preliminary hearing within ten days of the initial appearance. At the preliminary hearing the State must present sufficient evidence to establish probable cause to believe the charges are true; if it does so, the municipal court will bind the defendant over to the Common Pleas Court for consideration of the case by a grand jury. At a preliminary hearing in Ohio, the Rules of Evidence apply. The defendant is entitled to be present and to cross-examine the witnesses against him and present evidence in his own behalf.

On the other hand, those who are indicted, either "directly" as happened here, or after arrest on a municipal court warrant but before the preliminary hearing happens, are not entitled to a preliminary hearing.

As Pettus has claimed, there are tactical advantages to having a preliminary hearing, particularly discovering the witnesses for the State and subjecting them to probing cross-

examination. But "winning" at a preliminary examination (i.e., having the municipal judge find no probable cause) does not conclude the case. There is no *res judicata* or double jeopardy effect to such a finding and the prosecutor is free to proceed to present the case to a grand jury.

Division of felony defendants between the unindicted who get a preliminary hearing and the indicted who do not is clearly the result of state action within the meaning of Equal Protection jurisprudence: Ohio R. Crim. P. 5 was adopted by the Supreme Court of Ohio pursuant to the Modern Courts Amendment which enables self-government of the Ohio courts parallel to that granted the federal courts by Congress in the Rules Enabling Act.

Pettus does not claim he was denied a preliminary hearing on any basis other than literal application of Crim. R. 5. That is, he does not claim that this classification of felony defendants is on some invidious basis such as race, ethnicity, color, gender, or national origin. Under those circumstances, Supreme Court precedent requires the courts to find whether or not there is a rational basis for the classification. Under the rational basis test, courts will not overturn government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000). In an equal protection rational basis review, the burden is on the one attacking the governmental arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record. *Heller v. Doe*, 509 U.S. 312 (1993).

Rational-basis review "is not a license for courts to judge the wisdom, fairness or logic of legislative choices." *FCC v. Beach Communication, Inc*., 508 U. S. 307 (1993). See also, e.g., *Dandridge v. Williams*, 397 U. S. 471, 486(1970). Nor does it authorize "the judiciary [to] sit as a super legislature to judge the wisdom or desirability of legislative policy determinations made in

areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U. S. 297, 303 (1976) (per curiam). For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. See, e.g., *Beach Communications, supra,* at 508 U.S. 307 (slip op., at 7); *Kadrmas v. Dickinson Public Schools*, 487 U. S. 450, 462 (1988); *Hodel v. Indiana,* 452 U. S. 314, 331-332 (1981); *Massachusetts Bd. of Retirement v. Murgia*, 427 U. S. 307, 314 (1976) (per curiam). Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. See, e.g., *Nordlinger v. Hahn*, 505 U. S. 1 (1992); *Dukes, supra*, at 303. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger, supra,* at 505 U.S. 1 (slip op., at 13). *See also, e.g., United States R. Retirement Bd. v. Fritz,* 449 U. S. 166, 179 (1980); *Allied Stores of Ohio, Inc. v. Bowers*, 358 U. S. 522, 528 (1959). Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communications, supra.* See also, e.g., *Nordlinger, supra;  Sullivan v. Stroop,* 496 U.S. 478, 485 (1990); *Fritz, supra*, at 174-179; *Vance v.  Bradley,* 440 U.S. 93, 111 (1979); *Dandridge v. Williams, supra,* at 484-485.

A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, supra. *See also, e.g., Vance v. Bradley, supra*, at 111; *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 812 (1976); *Locomotive Firemen v. Chicago R.I. & P.R. Co.,*  393 U.S. 129, 139 (1968). A statute is presumed constitutional, see supra, at 6, and "the burden is on the one attacking the

legislative arrangement to negative every conceivable basis which might support it," *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973), whether or not the basis has a foundation in the record. In the case of the Ohio Rules of Criminal procedure, of course, it is the Supreme Court of Ohio which is acting as a legislature in promulgating the rules.

There is a rational basis for the distinction created by Crim. R. 5. Preliminary hearings consume scarce judicial resources: scheduling time, hearing time, and writing time. Their purpose is to determine if there is probable cause to proceed with a case, but for persons already indicted, that determination has been made by the body with ultimate authority on the question, the grand jury. Since grand jury indictment is guaranteed to Ohio felony defendants by the Ohio Constitution, it would be more efficient to present every case in the first instance to a grand jury, but preliminary hearing practice has deep roots in English criminal practice and has been part of Ohio and federal criminal practice since the Founding. But no court to the Magistrate Judge's knowledge and certainly none cited by Petitioner has ever held there was a federal constitutional right to a preliminary hearing.

Because Petitioner has not shown that Judge Metz's rejection of his equal protection preliminary hearing claim is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent, it is entitled to deference under 28 U.S.C. § 2254(d)(1).

In sum, Petitioner's equal protection preliminary hearing claim is procedurally defaulted by (1) his failure to timely present it to the trial court and (2) his failure to properly raise it on direct appeal. It is also without merit. On these three bases, Ground One should be dismissed with prejudice.

**Ground Two:  Denial of Right to Counsel of Choice**

In his Second Ground for Relief, Pettus claims he was denied the right to be represented in the trial court by counsel of his choice.

Respondent contends this claim is procedurally defaulted on the same basis as Ground One, to wit, that Pettus failed to raise this as an assignment of error when his first appellate attorney filed his brief on appeal (Amended Return, ECF No. 47, PageID 2447, *et seq*.).  The same structure of analysis must be applied with Ground Two.  Petitioner attempts to overcome this procedural default by claiming it resulted from ineffective assistance of appellate counsel.  He presented this claim to the First District Court of Appeals in the same way he presented the parallel claim as to Ground One, to wit, by including it in his 26(B) Application.  The First District also decided this claim on the merits.  First it recited the history of Pettus's interactions with the trial court about defense counsel:

> The record shows that Pettus was indicted in October 2016 and tried in October 2017. The court appointed counsel on November 18, 2016. Pettus filed a notice of his "refusal of attorney" on November 21. In December 2016, Pettus filed a detailed "declaration" reiterating that "refusal," the court granted a continuance to permit Pettus to "explore counsel options," and Pettus executed a waiver of counsel.
>
> In February 2017, the court again appointed counsel, who initiated pretrial discovery. In April, counsel filed a motion to withdraw as counsel, asserting that the attorney-client relationship was irreparably damaged, but then withdrew that motion. In July, counsel again moved to withdraw, alleging irreconcilable differences, and that withdrawal was accepted. New counsel was appointed in July.
>
> At a hearing in July, Pettus indicated his intention to retain counsel. In August, appointed counsel moved to withdraw. But thereafter an array of pretrial motions were filed by appointed counsel and by

17

> Pettus pro se. And appointed counsel represented Pettus during his
> October bench trial and December sentencing.

(Entry, State Court Record, ECF No. 46, Ex. 80, PageID 2271-72).

Upon these factual findings, the court concluded Pettus had given up his right to employ

counsel of choice by not exercising it when given the opportunity.

> The record shows that Pettus had ample opportunity to retain
> counsel over the course of the year between his October 2016
> indictment and his October 2017 trial. Therefore, his second
> proposed assignment of error would have presented no reasonable
> probability for success had it been advanced in the direct appeal.

*Id.* Pettus asserts in conclusory fashion that this is not a decision on the merits of his ineffective

assistance of appellate counsel claim about counsel of choice (Traverse/Reply, ECF No. 51,

PageID 2481-82).  For the reasons given above as to Ground One, the Magistrate Judge disagrees.

The First District applied *Strickland* as it is relevant to the appellate context and concluded, as it

had with Ground One, that the assignment of error would not have been successful if it had been

raised by the first appellate attorney.

As to the underlying claim that Pettus was denied the right to hire counsel of his choice,

this Court is bound to accept the factual conclusions of the First District under 28 U.S.C. §

2254(d)(2) unless Pettus demonstrates they are an unreasonable determination of the facts based

on the evidence in the state court record.

Pettus points to a dialogue with Judge Metz in August 2017 on a motion of Mr. Goldberg,

his second appointed counsel to withdraw because Goldberg believed he needed to subpoena

certain witnesses for trial and Pettus[2] did not want them subpoenaed.  Goldberg related that Pettus

told him "I'm retaining M.J."[3] (Transcript, State Court Record, ECF No. 23-14, PageID 1109).

---

[2] At the point in the transcript and in many earlier filings, Petitioner is referred to as Lashawn Pettus-Brown, the name under which he had previously been convicted.
[3] Identified in the Traverse as Mary Jo Hugan.

Judge Metz asks if M.J. has been retained. Pettus responds that he trying to obtain release of funds from Japan to pay the retainer, implicitly answering that she had not yet been retained.

Judge Metz responds:

> The case, as I see, is nine months old. It's set for jury trial on October 16, 2017. I know Ms. Hugan's schedule in general and it is one of the most jam-packed schedules as anyone who appears in front of this Court and it's probably six months before she can set a trial date.
>
> That's not going to happen. I have an obligation to dispose of this case. If we had the new rule, it would be twelve days late. As it stands right now it's three months and twelve days late, and I'm not going to continue the October 16th date.
>
> You essentially have two choices, essentially have two choices, Mr. Pettus-Brown. You have excellent counsel here. You get along well with him. He knows how to defend cases of this nature and knows what he needs to do. I would counsel you to trust him in that regard. And at this point I do not see a basis for granting the motion to withdraw simply so you can get another counsel who won't be able to try the case until some time next year, so your choices are essentially to go forward with Mr. Goldberg or to appear on the 16th to represent yourself. This is your second counsel. You've dismissed one, you've refused one. You have delayed this case over and over again and it's not happening again today.

*Id.* at PageID 1110-11. Pettus himself said nothing at this point. So far as the record shows, Pettus never paid M.J.'s retainer and neither she nor any other retained attorney ever tendered a substitution of counsel, much less with a representation that the trial could go forward as scheduled. Early in the process, Pettus had refused to waive his speedy trial right in the same document in which he refused appointment of counsel (State Court Record, ECF No. 23, Ex. 3). There is ample evidence to support Judge Metz's conclusion that Pettus's behavior had repeatedly delayed the proceedings.

The Sixth Amendment "guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent

the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (internal quotations and citation omitted). However, the right to counsel of choice is not absolute. *Id.* When a criminal defendant's right to be assisted by counsel of his or her choice is wrongly denied, it is unnecessary for a reviewing court to conduct a full *Strickland* inquiry to establish a Sixth Amendment violation. *Id.* at 148. "Deprivation of the right [to counsel of choice] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* However, when a criminal defendant's retained counsel becomes unavailable, it does not violate the defendant's right to counsel to require him to proceed with designated counsel. *See United States v. Allen*, 522 F.2d 1229, 1232–33 (6th Cir. 1975). When a trial court considers a defendant's request to substitute counsel in the middle of court proceedings, the court must balance an accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. *Wilson v. Mintzes*, 733 F.2d 424, 427–28 (6th Cir. 1984), *aff'd on remand*, 761 F.2d 275, 280–81 (6th Cir. 1985).

On the record as it stands, Pettus's choice of Attorney Hugan remains completely hypothetical. When a criminal defendant tells a court ten months into the case and two months before trial that he wants to fire competent counsel and substitute say, F. Lee Bailey or Alan Dershowitz, the Court is completely within constitutional bounds to inquire if one of those attorneys has actually been retained and will be ready to try the case as scheduled.

The First District's conclusion that Pettus had ample opportunity to retain counsel of choice, opportunity which he did not exercise, is supported by the record. Therefore its conclusion that it was not ineffective assistance of the first appellate counsel to fail to raise Ground Two is entitled to deference under 28 U.S.C. § 2254(d). Ground Two should be dismissed with prejudice

on that basis.

**Ground Three:  Violation of the Double Jeopardy Clause**

In his Third Ground for Relief, Pettus claims his theft and forgery convictions should have been merged under Ohio Revised Code § 2941.25 and that failure to do so violates his rights under the Double Jeopardy Clause.

Pettus raised his allied offenses claim on direct appeal and the First District decided it as follows:

### 3. Allied Offenses

[*P73]  Pettus additionally argues that the trial court failed to merge various convictions that were allied offenses of similar import. Because he raised this argument before the trial court, and because the court made a merger determination, we conduct a *de novo* review. *State v. Corcoran*, 1st Dist. Hamilton No. C-160627, 2017-Ohio-7084, ¶ 15; *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1.

[*P74]   Under R.C. 2941.25, separate sentences may be imposed on a defendant whose conduct supports multiple offenses if the offenses were dissimilar in import, were committed separately, or were committed with a separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus; *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 76.

[*P75]  Pettus first contends that several of his convictions for forgery and theft are subject to merger. Specifically, he argues that with respect to the offenses committed against Fifth Third Bank, his forgery convictions in count one and five must merge with his theft conviction in count six. And that with respect to the offenses committed against US Bank, his forgery convictions in counts nine, ten, 12, and 13 must merge with his theft conviction in count 14. Pettus argues that these offenses are subject to merger because at the same time that he uttered fraudulent checks in counts one, five, nine, ten, 12, and 13, he engaged in a cash withdrawal, which constituted

part of the thefts in counts six and 14, and, consequently, that these offenses were committed at the same time and with the same animus.

[*P76]  Pettus relies on *State v. Marneros*, 2015-Ohio-2156, 35 N.E.3d 925 (8th Dist.), and *State v. Taylor*, 4th Dist. Hocking No. 12CA10, 2013-Ohio-472, in support of his argument.

[*P77]  In *Marneros*, the defendant was likewise convicted of theft under R.C. 2913.02(A)(3) and forgery under R.C. 2913.31(A)(3). Because the defendant pled guilty to these offenses, the record contained few facts, but the court noted that multiple checks belonging to the victim, which the victim did not write, had been deposited into the defendant's account over a six-week period. *Marneros* at ¶ 42. The Eighth District held that the defendant's convictions for forgery and theft were subject to merger because they occurred simultaneously and arose from the same animus, stating that the forgery occurred when the defendant uttered the checks and the theft occurred when the defendant received the victim's money into his account. Id. at ¶ 44.

[*P78]  In *Taylor*, the defendant was convicted of theft under R.C. 2913.02(A)(1) and forgery under R.C. 2913.31(A)(3) after forging the name of an elderly gentleman on a check and then cashing the check at the bank on which it was drawn. *Taylor* at ¶ 8. The Fourth District held that the defendant's theft and forgery convictions were subject to merger. It explained that the forgery occurred when the defendant presented the check at the bank and the theft occurred when the defendant received the victim's money, and that the offenses "occurred simultaneously, as a result of the same conduct, and arose from the same animus." Id. at ¶ 13.

[*P79]  We find *Marneros* to be factually distinguishable because the defendant never made withdrawals after depositing the checks. And *Taylor* was not decided under the allied-offense analysis set forth in *Ruff*, but under the analysis set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, which is no longer controlling law.

[*P80]  Under the facts of this case, we find that the offenses of forgery and theft were committed separately. The offenses of forgery were committed when Pettus uttered the checks that he knew to have been forged. And the offenses of theft were then subsequently committed when Pettus made a cash withdrawal from his account. The crimes were separate and distinct acts committed during a course of criminal conduct. See *State v. Hayes*, 8th Dist.

Cuyahoga No. 105048, 2017-Ohio-7718, ¶ 23 (in rejecting the defendant's argument that convictions for passing bad checks and grand theft were allied offenses of similar import, the court recognized that "[a]lthough the grand theft was facilitated by the passing of bad checks, and thus could be considered a single course of conduct, the crimes were all based on separate and distinct acts.").

[*P81]  Because Pettus separately committed the offenses of forgery and theft that he argues were allied offenses of similar import, we hold that the trial court did not err in failing to merge the offenses.

[*P82]  Pettus further argues that his three convictions for forgery committed against Fifth Third Bank in counts two, three, and four were subject to merger because he uttered all three checks that were the subject of each offense in a single transaction with the same animus. We disagree. The record indicates that Pettus separately endorsed each check before presenting them for deposit. And he purposely uttered three separate fraudulent checks with the purpose of defrauding the bank of the monetary amount of each individual check. We thus find that the forgery offenses were committed both separately and with a separate animus, and that the trial court did not err in failing to merge Pettus's convictions for these offenses.

*State v. Pettus*, 2019-Ohio-2023 (1ˢᵗ Dist. May 24, 2019)(copy at ECF No. 23, Ex. 41).

Respondent argues this claim is not cognizable because this Court cannot review in a habeas corpus case the correctness of the state courts' interpretation of state law (Amended Return, ECF No. 47, PageID 2450-51).  Respondent further argues the claim is procedurally defaulted because it was not fairly presented to the Ohio courts as a federal constitutional claim. *Id.* at PageID 2451-52).  Alternatively Respondent argues on the merits that the First District's determination that Pettus was being separately punished for separate offenses is binding on this Court. *Id.* at PageID 2452-55.

In his Traverse/Reply, Pettus argues that *State v. Ruff*, 143 Ohio St. 3d 114 (2015), is the currently controlling Supreme Court of Ohio precedent interpreting Ohio Revised Code § 2941.25 (ECF No. 51, PageID 2477).  The undersigned agrees.  *Allen v. Warden, Warren Corr. Inst.,* 2020

WL 3642508, 2020 U.S. Dist. LEXIS 117630, (S.D. Ohio, 2020). Petitioner, however, disagrees

with the First District's application of *Ruff* (Traverse/Reply, ECF No. 51, PageID 2478, citing

*State v. Taylor*, 2013-Ohio-472 (Ohio App. 4th Dist. Feb. 6, 2013)); *State v. Marneros*, 2015-Ohio-

2016 (Ohio App. 8th Dist. Jun. 4, 2015); and *State v. Wolfe,* 10 Ohio App. 3d 324 (2nd Dist. 1983).

     In *Ruff* the Supreme Court of Ohio held:

> 1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.
>
> 2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.
>
> 3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

Syllabus, 143 Ohio St. 3d at 114. In deciding this case, the First District distinguished *Marneros*

on the facts and noted that *Taylor* was decided under a prior interpretation of Ohio Revised Code

§ 2941.25 by the Ohio Supreme Court. The same is, of course, true of *Wolfe* which was decided

long before *Ruff* was handed down.

     The First District decided that the offenses as to which Pettus urged merger come within ¶

3 of the syllabus in *Ruff* because they were committed separately. Pettus does not argue with that

finding. Instead, he argues the offenses were all committed with the same animus. But under *Ruff*

separate **conduct** is sufficient even if the same **animus** motivates both offenses. Thus it appears

to the Magistrate Judge that the First District has correctly applied *Ruff* to uphold the denial of

merger here.

But even if the Magistrate Judge believed the First District was wrong in applying *Ruff*, its interpretation of Ohio law would be binding on this Court. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")*, Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

*Brown v. Ohio,* 432 U.S. 161, 165 (1977), quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969).  The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).  The question of whether a defendant is being punished for separate offenses, however, is one of legislative intent.

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so.  *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985), *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided

the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim. *Jackson v. Smith*, 745 F.3d 206, 210 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632, 705 (1999), *overruled by State v. Johnson*, 128 Ohio St. 3d 153 (2010).

> What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, [w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

*Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)(internal quotation marks omitted). Ohio Rev. Code § 2941.25, and not the *Blockburger* test determines whether a person has been punished twice for the same offense under Ohio law in violation of the federal Double Jeopardy Clause. *Jackson v. Smith*, 745 F.3d 206, 213 (6th Cir. 2014).

Because the First District has definitively held Pettus was being properly punished under Ohio law for separate offenses, his Double Jeopardy claim is without merit and should be dismissed with prejudice.

**Ground Four:  Violation of the Due Process and Equal Protection Clause by Refusal to Permit Pettus to File a *Pro Se* Supplemental Brief on Appeal**

When his first appellate attorney did not include Pettus's preliminary hearing and counsel of choice assignments of error in the appellate brief, Pettus sought to file a supplemental brief *pro se* raising those issues (State Court Record, ECF No. 23, Exs. 31 & 33).  The State opposed the motion on grounds that hybrid representation is not permitted in Ohio courts, *Id.* Ex. 33, citing *State v. Martin,* 103 Ohio St.3d 385 (2004), paragraph one of the syllabus. The First District summarily denied leave to file the *pro se* brief without giving reasons *Id.* Ex. 34.

Represented on appeal to the Supreme Court of Ohio by the same counsel who represents him in these proceedings, Pettus raised as his Third Proposition of Law the claim that "An appellant, represented by counsel, is entitled to file, pro se, a brief as a supplement to the brief filed by counsel."  (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 23, Ex. 46, PageID 544).

Respondent asserts this Ground for Relief is procedurally defaulted because Pettus never presented this claim to either the First District or the Supreme Court of Ohio as a constitutional claim (Amended Return, ECF No. 47, PageID 2755 *et seq.*).  Respondent also asserts that the claim is meritless because there is no constitutional right to hybrid representation. *Id.*

Pettus replies that a claim is fairly presented to the state courts if the "phrasing [of] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;" or if the claim presented in state court is "alleging facts well within the mainstream of constitutional law." (Traverse/Reply, ECF No. 51, PageID 2479, citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir., 2000)).

The Magistrate Judge agrees with Respondent:  Pettus did not fairly present this claim as a

constitutional claim to either the First District or the Supreme Court of Ohio.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

A claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). The Sixth Circuit has recently held

> Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971).)

*Allen v. Mitchell*, 953 F.3d 858 (6th Cir. 2020).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d

28

674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Here Pettus did not even go so far as to use "talismanic words." Indeed, the words "due process," "equal protection," or even "constitutional" do not appear in his *pro se* motion in the First District or his counseled Memorandum in Support of Jurisdiction in the argument on this claim. Neither the text of the Constitution nor any federal case law was cited in support of this claim. It is therefore procedurally defaulted for lack of fair presentation.

Alternatively, the claim is without merit. There is no constitutional right to hybrid representation, with a defendant representing himself and also having counsel. *McKaskle v. Wiggins*, 465 U.S. 168 (1984), followed in *State v. Taylor*, 98 Ohio St. 3d 27, 2002-Ohio-7017 at ¶ 43 43 (2002). Pettus cites no law to the contrary. There is no doubt that what Pettus sought amounted to hybrid representation. As seen above in discussing Grounds One and Two, Pettus's first appellate counsel actively declined to include these two Assignments of Error, despite Pettus's desires.

In his argument on the merits, Pettus claims this Court has already recognized there is a right to file a *pro se* supplemental brief: "This Court has recognized that "a 'right' was created [by the Ohio appellate court] that was later denied to [Pettus]." (Order, ECF No. 22, PageID 200) (Barrett, J)." This argument completely misreads and quotes out of context what Judge Barrett wrote. In his Order denying preliminary injunctive relief and bond pending a decision, Judge

Barrett wrote as to Pettus's likely success on the merits:

> Petitioner cites *State v. Smith*, No. C-080607, 2009 WL 1900428
> (Ohio Ct. App. July 2, 2009) for the proposition that the First District
> Court of Appeals considered a defendant's pro se supplemental brief
> along with his appellate counsel's brief. (Doc. 13 at PageID 159).
> As such, a "right" was created that was later denied to Petitioner.
> (Id.). Unfortunately for Petitioner, *Smith* is an unpublished opinion,
> in which this so-called "right" was not a question presented to the
> court. Thus, *Smith* offers no authority, much less authority that
> would support a "significant" possibility of success on the merits [of
> his claim to a right to file a supplemental *pro se* brief].

(Order, ECF No. 22, PageID 200.)  In other words, Judge Barrett did not recognize any right to
file a *pro se* supplemental appellate brief.  Rather, in this passage, he recognized that Pettus was
**claiming** such a right which Judge Barrett found was unlikely to be recognized when the Court
reached the merits of the claim.

Pettus again relies on *State v. Smith*, 2009 WL 1900428 (1st Dist. Jul. 2, 2009).  But as
Judge Barrett previously noted, the *Smith* court was not presented with the question presented here,
to wit, whether there is a right to file a *pro se* brief.  Instead, the *Smith* court noted it had permitted
a *pro se* brief and would therefore consider the *pro se* assignments of error.  The opinion does not
recite any of the reasons why it granted leave to file a *pro se* brief.

Instead of creating a right to file a *pro se* brief, the Ohio Rules of Appellate Procedure give
the Courts of Appeal discretion to allow or not allow such briefing.  Ohio R. App. P. 16 provides
for an appellant's brief, an appellee's brief, and an appellant's reply brief; the rule concludes "No
further briefs may be filed except with leave of court."  This language confers discretion on the
court of appeals to allow additional briefing; it does not mandate allowance of such briefing by
any party, *pro se* or otherwise.

Pettus argues that because some courts of appeals (e.g. the Eighth District in *Smith*) allow
*pro se* briefing, the refusal of the First District to allow him to file a *pro se* brief demonstrates it

was showing prejudice against him (Traverse/Reply, ECF No. 51, PageID 2480).  But Pettus has not shown he is similarly situated to others who have been granted the privilege of filing *pro se* briefs.  As noted above when a state actor distinguishes between two persons who request the same thing from the state actor, the test for whether the Equal Protection Clause has been violated depends on whether there was a rational basis for the distinction.  Pettus has not provided any actual comparators (i.e., appellants who received the permission he was denied), but the facts of the case easily support the First District's decision.  Courts routinely refuse to allow hybrid representation.  A rational basis for doing so is that *pro se* filings may contradict or conflict with those filed by counsel.  There may also be confusion about who is to be served with motions or memoranda and by what method.  Given the confusion Pettus created in the trial court about when he was being represented by counsel and when he was not, there also existed a case-specific rational basis for denying *pro se* filing in this instance.

Pettus has not established that denial of his request to file a *pro se* supplemental brief violated his due process or equal protection rights.  Ground Four should therefore be dismissed as procedurally defaulted and as without merit.

**Ground Five:  Ineffective Assistance Of Appellate Counsel**

In his Fifth Ground for Relief, Pettus claims he received ineffective assistance of appellate counsel.  As noted above when considering ineffective assistance of appellate counsel as potential cause to excuse the procedural default of Grounds One and Two, the First District decided Pettus's ineffective assistance of appellate counsel claim on the merits when it denied his 26(B) Application.  Because that decision was an objectively reasonable application of *Strickland*, it is

entitled to deference under 28 U.S.C. § 2254(d)(1). Ground Five should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 2, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #